**In re HICKORY MILL APARTMENTS OF COLUMBUS, LTD., Shadowood Apartments II, Ltd., Pine Terrace Apartments, II, Ltd., Curiosity Creek Apartments, Ltd., Winter Wood Apartments, II, Ltd., Sunrise Apartments II, Ltd., Willowood Apartments of Frankfort II, Ltd., The Gainesville Venture, Ltd., Meadowood Apartments of Columbus, II, Ltd., Woodland Apartments II, Ltd., Stonehenge Apartments of Stark County, Ltd., Debtors.**

Bankruptcy Nos. 2–90–01975, 2–89–07308, 2–90–01210, 2–90–01252, 2–90–01365, 2–90–02085, 2–90–01251, 2–90–01486, 2–90–01973, 2–90–02084 and 2–90–03306.

United States Bankruptcy Court,
S.D. Ohio, E.D.

July 30, 1991.

---

P.C., Southfield, Mich., Special Counsel to Trustee of Consolidated Estate.

James Bownas, Legal Counsel, Cardinal Industries, Inc., Columbus, Ohio.

## OPINION AND ORDER ON MOTIONS FOR APPOINTMENT OF A TRUSTEE, REMOVAL OF GENERAL PARTNER OR OTHER INSTRUCTION FROM THE COURT AND MOTIONS TO REMOVE COUNSEL

BARBARA J. SELLERS, Bankruptcy Judge.

These matters are before the Court on legal issues raised by certain pleadings filed in each of the above captioned cases. Because of assertions of attorney-client privilege raised by the various pleadings, the memoranda of the parties and transcripts of pre-trial conferences were placed under seal at the request of one of the parties.

The Court has jurisdiction in these matters under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. These are core proceedings under 28 U.S.C. § 157(b) which this bankruptcy judge may hear and determine.

Charles W. Ewing, Charles W. Ewing Co., L.P.A., Hilliard, Ohio, Gary P. Price, Law Firm of Gary Paul Price, Columbus, Ohio, for debtors.

Anthony W. Clark, R. Michael Lindsey, Skadden Arps, Slate, Meagher & Flom, Wilmington, Del., and Sally M. Henry, New York City, for Jay Alix, Trustee.

Jay Alix, Jay Alix & Associates, Southfield, Mich., Chapter 11 Trustee.

Marilyn Shea–Stonum, Jones, Day, Reavis & Pogue, Columbus, Ohio, Co–Counsel to Trustee.

Charles M. Caldwell, Asst. U.S. Trustee, Columbus, Ohio, Columbus Office of U.S. Trustee for Region IX.

Leon Friedberg, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio, for Official Committee of Unsecured Creditors.

Harvey S. Minton, Minton & Leslie, Columbus, Ohio, Charles J. Taunt, Charles J. Taunt & Associates, Birmingham, Mich., Gary H. Cunningham, Kramer Mellen,

## I. General Procedural Background and Facts

The debtors are syndicated limited partnerships in which Cardinal Industries, Inc. ("CII") or its subsidiary Cardinal Industries of Florida, Inc. ("CIFI") act as general partner. CII and CIFI are also Chapter 11 debtors in a substantively consolidated case before this Court. That substantive consolidation does not encompass these limited partnership debtors whose limited partnership units are owned by various unrelated third parties.

Prior to substantive consolidation of the various Cardinal corporate cases, the Court appointed Jay Alix as trustee of CII ("Trustee"). Mr. Alix now serves as operating trustee for all the substantively consolidated Cardinal corporate cases. Part of his duties include the management of CII and CIF in their duties as general partners of the 700 or so limited partnerships which

remain in the Cardinal enterprise. An expanded discussion of the history and operations of the Cardinal enterprise can be found in *In re Cardinal Industries, Inc.*, 105 B.R. 834 (Bankr.S.D.Ohio 1989).

This Court determined earlier that a Cardinal syndicated limited partnership should not have the same legal counsel as its general partner. *Daleville Arborgate Inn, Ltd*, Case No. 2–89–01988 (Bankr.S.D.Ohio May 29, 1989) (unpublished opinion). That determination was made when CII and CIFI were acting as debtors-in-possession and parties had raised serious allegations of prepetition commingling of partnership and corporate general partner funds. The counsel proposed for the partnership had represented the general partner when the alleged events occurred. Separate representation for the limited partnerships and the general partner has been the practice in the Cardinal enterprise cases since that ruling. Subsequent to the substantive consolidation order in the corporate cases, however, all counsel for the Trustee have acted as counsel for all the corporate debtors in the substantively consolidated estates. The partnerships, both syndicated and unsyndicated, have continued to have separate counsel. Selection of those counsel by the Trustee on behalf of the general partner has generally resulted in a particular law firm representing a number of partnerships. Such multiple representation, which has generally involved multiple partnerships with mortgage relationships to a common lender, has not presented problems of conflicts of interest. *See, In re Vanderbilt Associates Ltd.*, 117 B.R. 678 (D.Utah 1990).

## II. *The Motions*

Each of the eleven syndicated partnerships involved in the matters now before the Court is represented by two sole practitioners, acting as co-counsel. In each partnership case, co-counsel Charles W. Ewing Co., L.P.A. has filed a motion which seeks appointment of a trustee, substitution of a new general partner or other appropriate direction from the Court. The Trustee, in turn, now seeks to remove Mr. Ewing as counsel for these partnerships.[1]

Determination of the trustee appointment and counsel removal motions on their merits will require the establishment of certain contested facts. Any attempt to prove those facts also will raise serious issues of attorney-client privilege. For example, Ewing intends to disclose through witnesses certain alleged communications with employees of the general partner or its subsidiary management companies. Ewing also intends to depose those persons prior to calling them as witnesses. That course of action has been challenged as privileged.

The parameters and effectuation of the role of partnership counsel underlie these matters. Ewing agrees that if his employment is subject to the control of the general partner, he should step aside as counsel to these partnerships and permit substitute or co-counsel to proceed. Since determination of counsel's role as a matter of law could eliminate the need to try the factual assertions underlying both motions, the Court agreed to decide that issue prior to receiving testimonial evidence on the trustee appointment or counsel removal motions. Because the privilege issues remain, and may have wider significance in other pending litigation related to CII's case, the memoranda filed by the parties have been filed and remain under seal.

## III. *Discussion and Legal Conclusions*

The Court has examined much of the existing case law relating to issues of counsel for general and limited partners and partnerships. Much of that case law addresses attorney conflicts of interest and often finds such conflicts where an attorney seeks to represent both limited partners and a general partner or a general partner and a limited partnership. *See, e.g., In re McKinney Ranch Associates*, 62

---

1. In Hickory Mill Apartments of Columbus, Ltd., Federal Home Loan Mortgage Corporation, the major secured lender, filed a response to Ewing's motion. In Willowood Apartments of Frankfort II, Ltd., the major secured lender, HomeFed Bank, Federal Savings Bank, fka Home Federal Savings & Loan Association of San Diego, California, filed a memorandum in response to Ewing's motion.

B.R. 249 (Bankr.C.D.Calif.1986), *Andrew v. Coopersmith (In re Downtown Investment)*, 89 B.R. 59 (Bankr.9th Cir.1988), *W.F. Development Corp. v. Office of U.S. Trustee (In re W.F. Development Corp.)*, 905 F.2d 883 (5th Cir.1990). Many of those cases involve one party which is in Chapter 11 and another party which is not a debtor under the Bankruptcy Code. The Court has not found any case, however, which involves a general partner, subsidiary management companies and related limited partnerships, all of which are in Chapter 11 and which have an appointed fiduciary trustee operating the general partner. Moreover, the issue to be determined here is not whether one attorney can represent two of those multiple interests. That decision was made early in this enterprise bankruptcy and the partnerships always have had separate and distinct counsel from that for the corporate entities, now managed by a Chapter 11 trustee.

█ Ideally, a managing general partner should receive appropriate advice from its own counsel and from counsel for the limited partnership. It would be counsel's role to assess the legal consequences of its client's proposed actions and to advise the client of the ramifications of those decisions. Counsel necessarily would have an obligation to examine all the consequences. If counsel represents both the general partner and the limited partnership, there is greater opportunity for counsel's vision to be clouded. Separate counsel, therefore, ensures that the advice counsel gives to a limited partnership client is independent from the advice the general partner receives from its counsel.

Partnership counsel represent only the partnerships. Although the uniform statutes governing partnerships under various state laws treat partnerships as entities for some purposes and as individual interests for other purposes, the Bankruptcy Code treats a partnership for all purposes as an entity. *See,* e.g. 11 U.S.C. §§ 101(35) and 301. Therefore, under the Bankruptcy Code, representation of a debtor partnership entity differs from representation of any of that entity's component parts. In practice, however, it is less clear what that separate representation means and how it is effectuated. The relationship and issues raised are complex and significant.

As a result of the Bankruptcy Code's adoption of the entity theory, representation of a partnership in bankruptcy can be analogized to representation of a corporation. A corporation has a management structure. Counsel's role can be to advise that management structure about the legal effects of potential decisions and actions or to point out various choices for such legal and business decisions. More commonly, the corporate client has made the business decision and the attorney then must advise of problems inherent in that decision or defend those choices in a legal forum to the extent possible under existing ethical rules. The attorney cannot make the client's management decisions, however. Shareholders, through individual, representative or derivative actions, may challenge those decisions and may force changes in the management structure. If the corporation is in bankruptcy, its creditors also acquire rights to be heard regarding the wisdom or appropriateness of corporate decisions. That role never vests in the attorney, however.

█ In a partnership, management power is located in the general partners. In limited partnerships such as those before this Court in the Cardinal enterprise bankruptcies, that power typically resides in a single managing general partner. Counsel to such a partnership does not represent the general partner in its interests which are unrelated to that partnership, but represents the partnership with its existing management structure. Therefore, when the general partner makes decisions for a limited partnership, counsel for that partnership should advise and defend those decisions. Such counsel should advise partnership management of the legal implications of its potential or past decisions. Counsel cannot make those decisions for the partnership, however. If partnership counsel cannot convince management to alter its decisions for legal reasons and cannot defend those decisions,

the appropriate action is to seek to withdraw as counsel for the partnership entity. If other parties, including creditors or limited partners, wish to challenge those management decisions, they have standing to make those challenges in the Chapter 11 setting. *See*, 11 U.S.C. § 1109(b). The benefits of such derivative-type actions would flow to the partnership estate generally, however, and not to petitioning parties on their own behalf. *See, Strain v. Seven Hills Assoc.*, 75 A.D.2d 360, 429 N.Y.S.2d 424 (N.Y.App.Div.1980).

■ In conclusion, the Court believes that counsel for a limited partnership cannot, acting without direction, bring an action to replace the management structure of the client partnership. Such an action pits the lawyer against the management of the client. Permitting such an action to go forward would severely chill the attorney-client relationship generally.

■ The Court realizes that this holding might appear to insulate actions of a general partner which violate its fiduciary duty to the partnership. Such insulation should not be the result, however, because there are other parties in interest able to address such concerns. If the Court were to support the right of the partnership attorney, acting alone, to attempt to replace the partnership's management, that result would put partnership counsel in an untenable position. Such counsel would have to make decisions not appropriately within the scope of an attorney-client representation. Counsel would be forced to reveal confidences shared by management while acting in its management role. If counsel to a limited partnership cannot accept the decisions of the client's management, such counsel must seek to withdraw from the representation. Likewise, unless the partnership agreement specifically provides otherwise, the general partner has the authority to cause the partnership to replace its legal counsel.

### IV. *Conclusion*

Based upon the foregoing the Court finds that the motions seeking the appointment of a trustee, filed in each of the above-captioned partnership cases, must be dismissed as having been filed without authority. This finding means that Ewing consents to a substitution of counsel, and, therefore, the Trustee's motions to remove counsel will be dismissed as moot. Substitute counsel, if any, should appear formally. Otherwise the Court will consider that co-counsel Gary Paul Price is now representing these partnerships.

IT IS SO ORDERED.